# United States District Court
## EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In the matter of the search of: | |
| The residence located at 1014 Newton Drive, McAlester, Oklahoma, within the Eastern District of Oklahoma | Case No.  24-MJ-349-JAR |

## APPLICATION FOR SEARCH WARRANT

I, - Rebecca Davison, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the **EASTERN** District of **OKLAHOMA** *(identify the person or describe property to be searched and give its location)*:

**SEE ATTACHMENT "A"**

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT "B"**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of Title 18, United States Code, Section 841(a)(1), and the application is based on these facts:

☒ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Rebecca Davison*
REBECCA DAVISON
SPECIAL AGENT
ATF

*[signature]*
*Judge's signature*
JASON A. ROBERTSON
UNITED STATES MAGISTRATE JUDGE
*Printed name and title*

Sworn to :

Date:   October 15, 2024

City and state:     Muskogee, Oklahoma

## AFFIDAVIT FOR SEARCH WARRANT

I, Rebecca Davison, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND INVESTIGATOR BACKGROUND

1. I am a federal law enforcement officer as defined under Rule 41(a)(2)(C) and am authorized to request this search warrant because I am a government agent who is engaged in enforcing federal criminal laws and I am within the category of officers authorized by the Attorney General to request such a warrant. I am a Special Agent with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF). I have been employed in this capacity since December 2020, and I am currently assigned to the ATF Muskogee Field Office. I completed the Criminal Investigator Training Program required by the ATF in September 2021. I also completed Special Agent Basic Training required by ATF for all new special agents. In connection with my official duties as an ATF Special Agent, I investigate criminal violations of federal firearms laws, federal arson laws, federal explosives laws, and federal narcotics laws.

2. The facts set forth in this affidavit are based on my personal observations, knowledge obtained from other law enforcement officers, my review of documents related to this investigation, and conversations with others who have personal knowledge of the events and circumstances described herein, and a review of open-source information including information available on the Internet. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact I or others have learned during the course of this investigation.

3. During my career, I have received hundreds of hours of training, including training regarding the investigation of those who are involved in the armed illicit distribution of controlled

substances and training regarding individuals who commit fraudulent acts. I have received training and have experience including, but not limited to, working in an undercover capacity, surveillance, management of confidential informants, drug-trafficking conspiracies, money laundering, organized criminal activity investigations, the preparation and execution of firearm and drug related search warrants and debriefing of informants and witnesses.

    4.    As a result of my training and experience as an ATF Special Agent, I am familiar with certain federal criminal laws and I know that it is a violation of Title 21, United States Code, Section 841(a)(1), to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense a controlled substance. I know that it is a violation of Title 21, United States Code, Section 846, for any person or persons to conspire to possess with the intent to distribute a controlled substance.

    5.    Based on my experience and specialized training and information I have received from law enforcement agencies, including other federal, state and local law enforcement agencies involved in the investigation of controlled substances and proceeds derived from the illegal possession and sale of controlled substances, I know that individuals involved in the distribution of illegal controlled substances have the following characteristics in common:

    a. That individuals who traffic and distribute methamphetamine and other controlled substances on a large scale commonly do so in leased or rented vehicles and automobiles, many of which have cleverly constructed hidden compartments for the concealment of controlled substances and other contraband, such as proceeds generated from the sale of controlled substances and other negotiable items.

    b. Those individuals engaged in the trafficking of controlled substances often convert outbuildings, campers, or other recreation vehicles (R.V.) into packaging rooms and

storage facilities for their methamphetamine and/or other controlled substances. Additionally, concealed storage spaces and/or rooms are often constructed in residences behind false walls and entrances. These areas often contain packaging equipment such as plastic bags, heat sealers, cellophane wrapping, tape, weighing scales, airtight containers, and containers with false compartments, smoking devices and other drug paraphernalia.

c. That individuals engaged in the manufacture of methamphetamine, or other illicit narcotics, often convert their residence and portions of residences into areas that are used in the manufacturing process and storage of controlled substances.

d. That individuals who receive cash proceeds from the sale of methamphetamine and other controlled substances attempt to hide these profits through the laundering of currency by investing in lucrative businesses, sometime legitimate, sometimes illegitimate, to give the appearance that the drug proceeds are being generated by legitimate business activity. Individuals will commonly have "front" businesses to launder the proceeds of the sale of controlled substances, and often purchase real estate, vehicles, antiques, conveyances, precious metals, rare coins, and gemstones with those proceeds.

e. That individuals who traffic in methamphetamine and other controlled substances usually maintain books, records, receipts, notes, ledgers, bank records, money orders, and other papers relating to the manufacture, sale, ordering, transportation, and distribution of controlled substances. These documents are maintained primarily to keep an inventory or "tally" sheet of their transactions. These individuals often "front" (provide controlled substances on consignment) controlled substances to their

      customers and associates and keep records concerning these transactions and the monies owed to them by their customers. The books, records, receipts, ledgers, and other papers and documents described above are most often maintained where traffickers have ready access to them, such as on their persons, in their motor vehicles, and/or at their place of business or residence.

f. That it is common for individuals who traffic in illegal controlled substances to hide contraband, proceeds of drug sales, and records of drug transactions in secure locations within their residences, businesses, place of operation and/or motor vehicles, for ready access to them, and to conceal such items from law enforcement authorities.

g. Those individuals who traffic in illegal controlled substances commonly maintain lists of addresses and/or telephone numbers in their books, papers, and/or computer systems which identify their drug trafficking associates and organizations. In addition, these individuals also routinely utilize cellular telephone and paging devices to maintain contact with their criminal associates. These telephones are often located where these individuals conduct their illegal business, such as their homes and/or motor vehicles.

h. Those individuals commonly use cellular telephones and paging devices to conduct their illegal activities, because they permit the individuals to remain mobile, thereby lessening the likelihood of detection by law enforcement officials. These individuals commonly give their cellular telephone numbers and their pager numbers to their associates so the associates can contact them at any time of day or night to conduct illegal drug transactions.

i. That firearms are typically kept in the residence and/or place of business of these individuals for the purpose of protecting their illegal enterprise and intimidating their

customers, competitors, and other individuals who might report their illegal activities to law enforcement. Firearms are tools of the trade for drug dealers. I have been involved in many search warrants involving illegal narcotics distributors and can state that on many occasions the suspects were found to be in possession of firearms. I know that these firearms are used by drug traffickers to protect their illegal enterprises.

j. Those individuals who deal in illegal controlled substances often trade stolen items such as firearms, tools, electronics, stolen checks, and other financial instruments in the return for controlled substances. These traded items are often the product of burglaries, robberies, and thefts.

k. That five-, ten- and twenty-dollar denomination bills are commonly utilized by buyers and sellers of controlled substances during their illegal transactions. Your Affiant is aware that the distributors of methamphetamine generally distribute in ten ($10), twenty ($20), fifty ($50), and one-hundred-dollar ($100) denominations.

l. That drug traffickers typically utilize counter-surveillance equipment to warn them of possible intruders as well as law enforcement officers, who may be approaching the residence to investigate possible illegal activities. I have personally observed such equipment present at drug traffickers' residences on numerous occasions.

m. That drug traffickers will often distribute narcotics out of different vehicles, which they either own, rent, lease, or can control in order to deter law enforcement's effort to thwart their livelihood. Often these drug traffickers will also distribute out of vehicles to keep law enforcement from ascertaining home addresses and locations where traffickers often reside.

6. Based upon my training and experience and the facts set forth herein, there is

probable cause to believe that evidence of violations of Title 21, United States Code, Section 841(a)(1) (Distribution and Possession with Intent to Distribute Controlled Substance) exists and will be located at 1014 Newton Drive, McAlester, Oklahoma, within the Eastern District of Oklahoma.

7.	This Affidavit is submitted in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant for the location specifically described in Attachment A of this Affidavit including the camper trailer and vehicles within the curtilage located at 1014 Newton Drive, McAlester, Oklahoma, within the Eastern District of Oklahoma, for evidence of violations of 21 U.S.C. §§841(a)(1), 846, which items are more specifically described in Attachment B of this Affidavit.

## **PROBABLE CAUSE**

8.	On October 15, 2024, ATF Task Force Officer David Couch was doing surveillance on 1014 Newton Drive in McAlester, Oklahoma to execute an arrest warrant of Sean Sather ("SATHER") who was indicted by a federal Grand Jury for Felon in Possession of a Firearm and Ammunition on October 9, 2024. At approximately, 12:10 PM TFO Couch observed SATHER exit the residence and meet with two male individuals who were parked in the roadway in front of the residence. Shortly after meeting with the two males, SATHER entered a black Dodge vehicle and left the residence. The residence is located at 1014 Newton Drive, McAlester, Oklahoma, in the Eastern District of Oklahoma.

9.	Several ATF agents began to pursue SATHER. Meanwhile, Resident Agent in Charge Ashley Stephens and I made contact with the two males who had just met with SATHER. These two males were in a blue Chevy vehicle that was blocking the roadway.

10.	As RAC Stephens approached the driver, the driver was reaching toward the

floorboard. RAC Stephens asked for him to place his hands on the steering wheel. RAC Stephens also observed a large stem of marijuana and loose marijuana in between the driver and passenger. The driver was identified as Rocky MURDAUGH, Jr. MURDAUGH immediately told RAC Stephens that he did not have a driver's license. RAC Stephens asked for MURDAUGH to step out of the vehicle. MURDAUGH continued to place his hands in his pockets after being told not to do so. RAC Stephens asked MURDAUGH to place his hands on the bed of the vehicle. RAC Stephens patted him down for officer safety. Prior to doing so, MURDAUGH advised RAC Stephens that he had a needle in his pocket and a small baggie of methamphetamine. RAC Stephens removed the baggy of methamphetamine along with an empty syringe and a glass pipe that contained methamphetamine residue. Ultimately, MURDAUGH admitted that he had come to SATHER's house to get methamphetamine. MURDAUGH stated SATHER gave him a baggie containing approximately 1 gram of methamphetamine prior to leaving to go to court. What SATHER told RAC Stephens is consistent with what TFO Couch observed when he saw SATHER meet with MURDAUGH prior to entering his vehicle and then leaving.

11. There is a reasonable basis to believe that methamphetamine will be found in SATHER's house. SATHER was observed leaving his house by TFO Couch to meet with two individuals. One of those individuals was MURDAUGH. MURDAUGH told me and RAC Stephens that SATHER had just given him methamphetamine prior to leaving his residence. When SATHER was taken into custody, ATF agents observed multiple small baggies in plain view inside of his truck. Based on my training and experience, I believe there is a reasonable basis that SATHER is distributing narcotics, and that evidence of this crime will be found in SATHER's residence. I know from my training and experience that drug dealers often conceal their drugs in their residences. Since SATHER was observed by TFO Couch leaving his residence and then

distributing methamphetamine to MURDAUGH, there is a reasonable basis that SATHER has narcotics in his residence.

12. SATHER was taken into custody at The Bank, located at 201 E. Carl Albert Parkway, McAlester, Oklahoma. ATF agents observed multiple small baggies in plain view inside of his truck. SATHER's vehicle was searched incident to arrest and multiple small baggies were found in his truck. Based on my training and experience, individuals who distribute controlled substances use baggies to package and sell narcotics. The brief interaction that TFO Couch observed between SATHER and MURDAUGH is consistent with individuals who distribute controlled substances. Based on my training and experience, it is common for people who sell drugs to meet individuals for a brief amount of time to conduct the transaction. Additionally, the statements made by MURDAUGH corroborated TFO Couch's observations. SATHER has multiple prior convictions for possession of controlled dangerous substances: Possession of Controlled Substance (CF-2008-551), Possession of Controlled Substance within 1000 feet of School (CF-2009-183), Possession of Controlled Substance with Intent to Distribute (CF-2009-30). SATHER was also arrested in September 2024 by the Hartshorne Police Department for misdemeanor possession of a controlled substance (CM-2024-00411).

13. Since this affidavit is being submitted for the limited purpose of enabling a judicial determination of whether probable cause exists to justify the issuance of a search warrant for the described premises, I have not included each and every fact known concerning this investigation to me and others involved in this matter. I have set forth only the facts that I believe are essential to establish the necessary foundation for a search warrant ordering the search of the described premises. Based on the above and the totality of the circumstance, I believe that probable cause exists to search 1014 Newton Drive, McAlester, Oklahoma, (Attachment "A"), for evidence of violations of Title 21, United States Code, Section 841(a)(1)(Distribution and Possession With Intent to Distribute Controlled Substance) (Attachment "B").

*Rebecca Davison*
_____
Rebecca Davison, Special Agent
Bureau of Alcohol, Tobacco, and Firearms

Sworn to me: 10/15/2024

_____

United States Magistrate Judge

## **ATTACHMENT A**

1014 Newton Drive, McAlester, Oklahoma, Eastern District of Oklahoma.

The structure to be searched is a single-story red brick residence with white in color siding. The numbers "1014" are posted to the left of the front door.



## ATTACHMENT B

1. Methamphetamine, or other narcotic precursors, fruits, instrumentalities, monies, records, and any and all chemicals, materials, and substances related to the possession and use of controlled substances.

2. Paraphernalia used in the manufacture, possession, distribution and use of controlled substances, including but not limited to: glassware, rubber gloves, plastic baggies, scales, razor blades, syringes, scales, baggies, and other controlled dangerous substances; ingredients used to increase the volume and reduce the purity of the controlled substances.

3. Cash, currency, and records related to income and expenditures of money and wealth concerning controlled substances, including but not limited to: money orders, wire transfers, credit card records, cashier checks, receipts, bank statements, passbooks, checkbooks, check registers, storage unit keys, notes and receipts for storage unit(s) and safe deposit box key.

4. Records to establish the persons who control, possession, custody or dominion over property searched and from which evidence is seized, to include but not limited to: personal mail, checkbooks, personal identification, notes, other correspondence, utility bills, rent receipts, financial documents, keys, photographs, leases, mortgage bills and telephone answering machine introductions and messages, and all records related to telephone records.

5. Books, records, receipts, notes, ledgers, and other papers related to the distribution of controlled substances.

6. Personal books, and papers reflecting, names, addresses, telephones numbers, and other contact or identification data relating to the distribution of controlled substances.

7. Cellular telephones used to facilitate a drug trafficking crime, along with computers, laptops, other cellular telephones, I-Pads, tablets, or other electronic media. In addition, the applied-for warrant would authorize the forensic examination of these devices for the purpose of identifying electronically stored data.

8. Surveillance cameras, drones or other unmanned aerial vehicles, televisions, scanners, police radios, video, any other equipment used for the detection of police presence.